# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### HATTIESBURG DIVISION

**TAWANA BOLTON**                                                    **PLAINTIFF**

**v.**                              **CIVIL ACTION NO. 2:11-CV-220-KS-MTP**

**FORREST COUNTY, MISSISSIPPI, et al.**                    **DEFENDANTS**


## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court **grants in part and denies in part** Defendants' Motion for Summary Judgment [76].

## I. BACKGROUND

Plaintiff was a correctional officer at the Forrest County Juvenile Detention Center, which is operated by Defendant Forrest County, Mississippi. Defendant Chris Selman is the director of the facility, and Defendant Chris Bolton is the Sheriff's Chief Deputy.

In 2008, Plaintiff began making copies of surveillance videos at the facility, allegedly concerned about the abuse of juvenile inmates. In June 2010, Plaintiff copied a recording of Defendant Chris Selman allegedly abusing a female inmate. She claims to have reported the incident to her superiors.

Plaintiff called in sick on June 23, 2010. She remained on sick leave until Defendants terminated her employment on July 6, 2010. Defendant Selman claims that Plaintiff submitted a false medical excuse, and that Plaintiff screamed and cursed at him when confronted about it. Accordingly, Defendants claim that they terminated

Plaintiff for insubordination and conduct unbecoming an officer. Plaintiff denies that she submitted the medical excuse in question, and she denies that she screamed or cursed at Selman. She believes that Defendants terminated her in retaliation for her complaint about Defendant Selman, and for her making copies of surveillance videos at the facility.

After Plaintiff had been terminated, she distributed the videos to various parties, including a local television station. The Sheriff's Department sought and obtained a temporary injunction from the Forrest County Youth Court, which was later vacated by the Mississippi Supreme Court. The subsequent news reports and publication of the videos led to litigation in which a non-profit organization sought access to the facility under various federal statutes.

Plaintiff filed this lawsuit in March 2011. She asserted the following claims:

- Section 1983 claims against all Defendants for discharge in retaliation for the exercise of her First Amendment right to report the abuse of an inmate and to make videotapes of abuse of inmates;

- Section 1983 claims against all Defendants for violating her First Amendment right to free speech by imposing a prior restraint in the form of a temporary injunction;

- Section 1983 claims against all Defendants for violating her Fourteenth Amendment equal protection and due process rights;

- State tort claims of tortious interference with employment against Defendants Selman and Bolton;

- Title VII claims against all Defendants for discrimination on the basis of her sex; and

- FMLA claims against all Defendants for terminating her because

of her medical leave.

Defendants filed a Motion for Summary Judgment [76], which the Court now addresses.

## II. DISCUSSION

### A.    *Standard of Review*

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials,

speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

## B.    *First Amendment Retaliation*

Plaintiff claims that Defendants violated her "First Amendment right to be free from retaliation for protected speech." *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011). First, Plaintiff must demonstrate that she spoke as a citizen, rather than as part of the official duties of her public employment. *Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008). Then she must demonstrate: (1) that she suffered an adverse employment decision, (2) that her speech involved a matter of public concern, (3) that her interest in speaking outweighed the Defendants' interest in promoting efficiency, and (4) that her protected speech motivated Defendants' conduct. *Juarez*, 666 F.3d at 332.

### 1.    *Speech Pursuant to Official Duties*

First, Defendants argue that Plaintiff's expressive conduct – making copies of surveillance videos from the facility and reporting Defendant Selman's abuse of an inmate – was not a matter of public concern because it was done pursuant to her official duties as a public employee.

"Activities undertaken in the course of performing one's job are activities pursuant to official duties and not entitled to First Amendment protection." *Davis*, 518 F.3d at 313; *see also Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 1960, 164 L. Ed. 2d 689 (2006). When determining whether expressive conduct occurs pursuant to

4

a public employee's official duties, the "formal job description is not dispositive, nor is the fact that the speech relates tangentially to the subject matter of one's employment." *Davis*, 518 F.3d at 312 (internal citation omitted). "[W]hen a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job," and, therefore, it does not enjoy First Amendment protection. *Id.* "If however a public employee takes his job concerns to persons outside the work place in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen." *Id.*

### a. Making the Videos

The record contains evidence indicating that Plaintiff's actions in making copies of the facility's monitoring videos were not undertaken pursuant to her official duties. Plaintiff testified that she began making copies of surveillance videos in 2008 after a coworker told her that she was going to be fired [76-1]. She testified that she "did what [she] had to do" because she did not think anyone would believe her allegations regarding abuse at the facility.

Kelvin Newsome, a fellow employee at the facility, testified that Sergeant Donnell Brannon, Plaintiff's immediate supervisor, advised Plaintiff to make copies of a recording of Defendant Selman mistreating an inmate [76-16]. Brannon purportedly told Plaintiff to "keep them for her reasons." Newsome opined that Plaintiff "had something on them that they didn't want nobody to know about."

Andre Cooley, a fellow employee at the facility, testified and produced an e-mail

[76-15] in which he stated that he observed Plaintiff make a copy of a surveillance video while Sergeant Brannon "was looking out for Chris Selman." Cooley alleged that Plaintiff said to him: "I got so much evidence on this place that if these [expletives] ever try and come after me it will be on CNN, Nancy Grace, and they [will] put a padlock on the [expletive] gate. Won't nobody have a [expletive] job." Cooley further stated that Plaintiff advised a female inmate that she could sue Forrest County, and that everything would be proven by the video recordings.

All of the above evidence indicates that Plaintiff made the videos surreptitiously, to use against her superiors in case she were ever terminated. These actions were not part of her official duties or undertaken in the course of performing her job. Indeed, Forrest County argued before the Youth Court [76-21] that Plaintiff was not authorized to make the videos. Accordingly, the Court concludes that *Garcetti* is inapplicable to Plaintiff's claim that she suffered retaliation for making copies of surveillance videos.

### b. Complaints about Defendant Selman

As noted above, "when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job," and, therefore, it does not enjoy First Amendment protection. *Id.*; *see also Garcetti*, 547 U.S. at 424, 126 S. Ct. 1951 (where deputy district attorney submitted a memo to his superiors alleging that a deputy sheriff had made serious misrepresentations in an affidavit used to obtain a search warrant, his speech was not protected because it was pursuant to his official responsibilities). However, "it is not dispositive that a public employee's statements are made internally." *Davis*, 518

F.3d at 313 n. 3.

Plaintiff testified [76-1] that she attempted to talk to Defendant Selman about the alleged abuse at the facility, but that he wouldn't listen to her. Plaintiff further testified that she called the Sheriff, but declined to meet with him because he wanted Selman to be present for the meeting. She also testified that she submitted reports of abuse to Sergeant Donnell Brannon on approximately eight occasions – including ones in which Selman was allegedly involved. She claims that she tried talking to Chief Deputy Bolton and the Sheriff, but they didn't want to talk to her. She did not take her complaints outside the Department prior to her termination.

The record contains conflicting evidence regarding the chain of command and how grievances and complaints were handled at the facility. The parties presented evidence of at least four different complaint/grievance procedures [76-17, 83-11, 76-13, 76-14] contained in various documents. Therefore, the evidence is inconclusive, at best, as to whether Plaintiff made her complaints about Defendant Selman within the prescribed chain of command. It is clear, however, that Plaintiff did not take her complaints about Defendant Selman to anyone outside the Department prior to being terminated. Instead, she complained to Sergeant Brannon, her superior officer.

The subject matter of Plaintiff's complaint relates – at least tangentially – to her official duties as a correctional officer. However, the parties have not presented the Court with Plaintiff's official job description. In any case, it would not be determinative as to whether the complaints were pursuant to her official duties. *Williams v. Riley*, 275 F. App'x 385, 389 (5th Cir. 2008) (district courts should not rely solely on official

job descriptions). The record contains no evidence of Plaintiff's specific job duties, and "[a]lthough it may be presumed that an employee's official job duties at a reasonable sheriff's department would include reporting crimes perpetrated at work by department members, it is not clearly so here." *Id.*

Therefore, the Court concludes that there remains a genuine dispute of material fact as to whether Plaintiff's complaints about Defendant Selman were pursuant to her official duties and, therefore, unprotected speech. *Id.* (where only evidence in record was an official duty description that the plaintiff disputed, a genuine issue of material fact existed as to whether the plaintiffs' speech was pursuant to their duties). The speech at issue took place in the workplace, and it related to Plaintiff's job. However, it is not clear whether it took place within the formal chain of command, or whether it was part of Plaintiff's official duties. According Plaintiff all reasonable inferences, the Court must reject Defendant's argument that Plaintiff's First Amendment retaliation claims are barred by *Garcetti*.

2.     *Interest Balancing*

Defendants also argue that Plaintiff's termination was justified because of the disruption she caused to the operation of the Sheriff's Department. "[T]he government as employer indeed has far broader powers than does the government as sovereign." *James v. Tex. Collin County*, 535 F.3d 365, 379 (5th Cir. 2008). However, "public employees do not surrender all their First Amendment rights by reason of their employment." *Id.* "A public employee's speech is protected by the First Amendment when the interests of the worker as a citizen commenting upon matters of public

concern outweigh the interests of the state as an employer, in promoting the efficiency of the services it performs through its employees." *Charles v. Grief*, 522 F.3d 508, 512 (5th Cir. 2008).

The government employer has the burden of establishing that its interest in promoting the efficiency of its services outweighs the employee's interest in speaking. *Vojvodich v. Lopez*, 48 F.3d 879, 885 (5th Cir. 1995). However, the burden "varies depending upon the nature of the employee's expression. The more central a matter of public concern the speech at issue, the stronger the employer's showing of counter-balancing governmental interest must be." *Jordan v. Ector County*, 516 F.3d 290, 299 (5th Cir. 2008). In balancing these interests, the Court considers a number of factors, including:

> (1) the degree to which the employee's activity involved a matter of public concern; (2) the time, place, and manner of the employee's activity; (3) whether close working relationships are essential to fulfilling the employee's public responsibilities and the potential effect of the employee's activity on those relationships; (4) whether the employee's activity may be characterized as hostile, abusive, or insubordinate; (5) whether the activity impairs discipline by superiors or harmony among coworkers.

*Id.* The Court also considers whether the speech "impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise," but the Court "must remain mindful that creating room for free speech in a hierarchical organization necessarily involves inconveniencing the employer to some degree." *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 192 (5th Cir. 2005). Furthermore, because law enforcement agencies "function as paramilitary organizations charged with

maintaining public safety and order, they are given more latitude in their decisions regarding discipline and personnel regulations than an ordinary government employer." *Nixon v. City of Houston*, 511 F.3d 494, 498 (5th Cir, 2007).

Defendants claim that Plaintiff's distribution of the videos disrupted the Sheriff's Department's operations. However, Plaintiff's First Amendment retaliation claim is not premised upon the distribution of the videos. Rather, Plaintiff claims that she was terminated in retaliation for *making* the videos, and it is undisputed that Plaintiff did not distribute the videos to anyone outside the Department until after she had already been terminated. Therefore, Defendants' interest-balancing argument is inapposite. Furthermore, Plaintiff testified that she began making copies of surveillance videos in 2008, and Defendants have not presented any evidence that this activity disrupted the functions of the Juvenile Detention Center. According to the record, the disruptions of which Defendants complain – the media coverage and injunction proceedings – did not begin until after Plaintiff had been terminated.

### 3. Causation

Next, Defendants offer a variety of arguments related to the issue of causation. "First Amendment retaliation claims are governed by the *Mt. Healthy* mixed-motives framework." *Gonzalez v. Dallas County*, 249 F.3d 406, 412 n. 6 (5th Cir. 2001); *see also Charles*, 522 F.3d at 516 n. 28; *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977).

> [O]nce an employee has met his burden of showing that his protected conduct was a substantial factor or motivating factor in the employer's adverse employment action, the district court should determine whether

the employer has shown by a preponderance of the evidence that it would have taken the same adverse employment action even in the absence of the protected conduct. If the employer is able to make such a showing, then the protected conduct in question does not amount to a constitutional violation justifying remedial action.

*Charles*, 522 F.3d at 516 n. 28 (punctuation omitted). A plaintiff is not required to produce direct evidence of a retaliatory motive. *Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997). Rather, he or she may "rely upon a chronology of events from which retaliation may be plausibly inferred." *Id.* (punctuation omitted).

### a. Bolton's Knowledge Prior to Plaintiff's Termination

First, Defendants argue that Defendant Bolton did not – prior to Plaintiff's termination – know that she had made copies of surveillance videos. Therefore, Defendants contend that Chief Deputy Bolton could not have fired Plaintiff in retaliation for such actions. Chief Deputy Bolton testified [76-12] that the first time he heard of Plaintiff making video recordings was in September 2010 – after Plaintiff had already been terminated. Plaintiff testified [76-1] that she gave copies of surveillance videos to Sergeant Brannon, and she assumed that he passed them on to Chief Deputy Bolton. She admitted, however, that she had no evidence that Chief Deputy Bolton knew that she was making copies of surveillance recordings. She never directly reported the activity to him. Plaintiff merely speculated that Bolton knew, as did her coworker, Kelvin Newsome [76-16].

Plaintiff has not offered any evidence that Bolton knew about her making copies of surveillance videos, and mere speculation is insufficient to create a genuine dispute of material fact. *Oliver*, 276 F.3d at 744. Defendants presented undisputed testimony

11

from Chief Deputy Bolton that he did not know Plaintiff had made copies of videos until September 2010 – after she had already been terminated. Accordingly, the Court finds that Bolton could not have been motivated by Plaintiff's video copying activities. The Court grants Defendants' motion for summary judgment as to Plaintiff's First Amendment retaliation claim against Defendant Bolton in both his official and individual capacities.

### b.    Selman's Knowledge Prior to Plaintiff's Termination

Defendants also argue that Selman did not – prior to Plaintiff's termination – know that Plaintiff had made copies of surveillance recordings. Plaintiff presented sufficient evidence to create a genuine dispute of material fact on this issue. Andre Cooley testified [83-8] that he told Selman about the videos during the week of June 20, 2010 – approximately two weeks before Plaintiff was terminated. Cooley also testified that Selman later asked him to provide a written report of what he knew. Cooley hand-delivered the written report [83-9] to Selman on June 25, 2010 – approximately one week before Plaintiff's termination. Cooley wrote that he witnessed Plaintiff make copies of a surveillance video of a lock-down incident with a female inmate on or around June 8, 2010.

Defendants attempt to downplay this evidence by claiming that Selman had no *first-hand* knowledge of Plaintiff making the recordings, dismissing Cooley's testimony and written report as mere rumor. However, Defendants failed to cite any legal authority supporting such a distinction. The issue is not whether Selman had first-hand knowledge of Plaintiff's expressive activity. The issue is whether he believed

what Cooley told him, and whether his decision to terminate Plaintiff was motivated by that belief. Cooley's testimony that Selman later requested a written account indicates that Selman did, in fact, believe Cooley's story. Therefore, the Court finds that Plaintiff has presented sufficient evidence to create a genuine dispute of material fact as to whether Selman knew about Plaintiff making copies of surveillance videos prior to terminating her employment.

### c. Defendants' Motivation for Firing Plaintiff

Next, Defendants argue that the evidence is undisputed that Selman fired Plaintiff for insubordination and conduct unbecoming an officer. They contend that she violated the County's code of conduct by manufacturing a false medical excuse and responding to Selman's questions about it by screaming at him and using profanity. In response, Plaintiff argues that Defendants' stated reasons for terminating her employment were pretextual, and that the actual reason was to retaliate against her for making copies of surveillance videos.

Plaintiff has presented sufficient evidence to create a genuine dispute of material fact as to whether Defendants' stated reasons for terminating Plaintiff's employment were pretextual. First, Plaintiff notes that she was terminated approximately two weeks after Selman learned that she was making copies of surveillance videos. *See Jordan*, 516 F.3d at 300-01 (length of time between expressive conduct and termination is probative of causation, but not determinative); *Brady*, 113 F.3d at 1424 (plaintiff may rely upon a chronology of events from which retaliation may plausibly be inferred).

Next, Plaintiff denied [83-1] that she submitted the purportedly false medical excuse, and her cousin, Lillian Bolton, denied [83-15] faxing the medical excuse to Defendants. Plaintiff also denied that she screamed or used profanity during a telephone conversation with Selman. All of this evidence casts doubt upon Defendants' stated reasons for terminating Defendant. If Defendants' stated reasons are false, "the likelihood of their serving as a pretense for another, unconstitutional basis . . . is increased." *Love v. Sessions*, 568 F.2d 357, 361 (5th Cir. 1978). Accordingly, the Court finds that there exists a genuine dispute of material fact as to whether Defendants would have terminated Plaintiff in the absence of her expressive conduct.

## C.  *42 U.S.C. § 1983*

Next, Defendants offer a variety of arguments particular to 42 U.S.C. § 1983, the statute which provides Plaintiff a cause of action for Defendants' alleged constitutional violations.

### 1.  *Who Made the Relevant Decisions?*

First, Defendants argue that Forrest County can not be held liable for the acts of its lower level employees, and that it had no part in the decision to terminate Plaintiff or to file the suit to block publication of the videos.

> [A] municipality or local government can be liable under § 1983 only if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation. Such a body is responsible only for its own illegal acts and is not vicariously liable under § 1983 for its employees' actions. Plaintiffs who seek to impose liability under § 1983 therefore must prove that an action pursuant to official municipal policy caused their injury. Only an employee with final policymaking authority in that area can create official municipal policy.

*Alexander v. Brookhaven Sch. Dist.*, 428 F. App'x 303, 307 (5th Cir. 2011) (punctuation and citations omitted).

"Sheriffs in Mississippi are final policymakers with respect to all law enforcement decisions made within their counties." *Brooks v. George County*, 84 F.3d 157, 165 (5th Cir. 1996). Accordingly, a county may be liable for the law enforcement decisions of its sheriff which violate a citizens constitutional rights. *Id.* Defendant Selman testified [76-2] that the Sheriff was the only one with authority to terminate Plaintiff, and Defendant Bolton testified [76-12] that he and the Sheriff jointly decided to seek an injunction barring Plaintiff's distribution of the recordings. Therefore, Forrest County may be liable for the Sheriff's decisions to terminate Plaintiff and seek an injunction barring distribution of the recordings.

2.  *The Existence of an Official Custom or Policy*

Defendants also argue that the alleged constitutional violations did not occur pursuant to any official custom or policy. Therefore, they contend that neither Forrest County nor its officials acting in their official capacity may be liable under Section 1983. Generally, counties may be liable when an alleged constitutional deprivation is connected to a "governmental custom, policy statement, ordinance, regulation or decision officially adopted and promulgated by the body's officers." *Jones v. Lowndes County*, 678 F.3d 344, 349 (5th Cir. 2012). However, municipal liability under Section 1983 can also be predicated "on decisions made by those with power to make policy for the municipality." *Mackey v. Helfrich*, 442 F. App'x 948, 950 (5th Cir. 2011) (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 480, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)). As

noted above, sheriffs are policy-making officials under Mississippi law. *Brooks*, 84 F.3d at 165. The record contains evidence that the Sheriff – a policy-making official – decided to terminate Plaintiff and seek an injunction barring her distribution of the videos. Therefore, the Court rejects Defendants' argument that the alleged constitutional violations did not occur pursuant to an official custom, policy, or decision.

### D.    *Qualified Immunity*

Defendants also argue that Defendant Selman is entitled to qualified immunity. "A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002); *see also Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010). The Fifth Circuit noted:

> Where, as here, a section 1983 defendant pleads qualified immunity and shows he is a government official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.

*Kovacic*, 628 F.3d at 211 (punctuation and internal citations omitted).

The Court conducts a two-pronged analysis in deciding whether a defendant is entitled to qualified immunity. *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007). In the first prong of the analysis, the Court determines "whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant

violated the plaintiff's constitutional rights." *Id.* at 410. In the second prong, the Court

"applies an objective standard based on the viewpoint of a reasonable official in light

of the information then available to the defendant and the law that was clearly

established at the time of the defendant's actions." *Id.* at 411. The Court may examine

the prongs of the analysis in whatever order it chooses. *Manis v. Lawson*, 585 F.3d 839,

843 (5th Cir. 2009).

### 1. *Violation of Constitutional Rights?*

To establish a retaliation claim, Plaintiffs must prove (1) that she suffered an

adverse employment decision, (2) that her speech involved a matter of public concern,

(3) that her interest in speaking outweighed the Defendants' interest in promoting

efficiency, and (4) that her protected speech motivated Defendants' conduct. *Juarez*,

666 F.3d at 332. The first element is undisputed.

Plaintiff has presented sufficient evidence to demonstrate that her speech

involved a matter of public concern. As noted above, the record does not establish that

either her complaints about Selman or her copying of surveillance videos were part of

her official duties. Therefore, *Garcetti* is inapplicable. *See Williams*, 275 F. App'x at

389. As for the subject matter of her speech activity, "[t]here is perhaps no subset of

public concern more important than bringing official misconduct to light," *Davis v.

Ector Cnty.*, 40 F.3d 777, 782 (5th Cir. 1994), particularly when such speech involves

the operation of a police department. *Kinney v. Weaver*, 367 F.3d 337, 361 (5th Cir.

2004); *see also Brawner v. Richardson*, 855 F.2d 187, 192 (5th Cir. 1988) ("The

disclosure of misbehavior by public officials is a matter of public interest and therefore

deserves constitutional protection, especially when it concerns the operation of a police department.").

Next, the Court finds that Plaintiff has demonstrated that her interest in speaking outweighed Defendants' interest in promoting efficiency. Plaintiff testified that she began making copies of surveillance videos in 2008, and she testified that she had complained about abuse at the facility – and Selman, in particular – on several occasions prior to her termination. Defendants have not presented any evidence that this activity disrupted the functions of the Juvenile Detention Center. According to the record, the disruptions of which Defendants complain – the media coverage and injunction proceedings – did not begin until after Plaintiff had been terminated.

Finally, the Court finds that Plaintiff presented sufficient evidence to demonstrate that her termination was motivated by her speech activity. Plaintiff presented evidence that Selman knew she had copied a recording of him allegedly abusing an inmate. Shortly after he gained this knowledge, he recommended Plaintiff's termination. The County's 30(b)(6) representative, David Miller, testified [76-3] that Selman made the decision to terminate Plaintiff. Although Selman claims the decision was based on a fraudulent medical excuse and insubordinate behavior, Plaintiff presented evidence that these reasons were mere pretext. She denies having sent the false medical excuse, and she denies screaming at Selman or using profanity during a conversation with him. Viewing all of this evidence in the light most favorable to Plaintiff, the Court concludes that the evidence is sufficient for this stage of the preceeding to establish that  Defendants violated Plaintiff's First Amendment rights.

18

2. *Clearly Established Constitutional Right*

Next, Selman argues that there is no clearly established constitutional right to make copies of surveillance videos. Neither party provided any substantial discussion of whether making copies of surveillance videos qualifies as expressive conduct protected by the First Amendment. Defendants argued that it is not protected activity, but they provided no legal authority in support of the argument. Therefore, the Court declines to address the issue in this opinion.

Regardless, Plaintiff's First Amendment retaliation claim stems both from her making copies of surveillance videos and from her complaints about Defendant Selman's alleged abuse of a female inmate. There is a clearly established constitutional right to disclose misbehavior by public officials. *Brawner*, 855 F.2d at 192. Furthermore, there is a clearly established constitutional right to engage in speech activity without fear of retaliation, and – viewing the evidence in the light most favorable to Plaintiff – Selman's conduct falls squarely within the clearly established elements of First Amendment retaliation. *See Juarez*, 666 F.3d at 336.

3. *Objective Reasonableness*

Finally, Defendants argue that it was objectively reasonable for Selman to terminate Plaintiff. First, they contend that Plaintiff's false medical excuse and profane screaming provided sufficient reason to fire her. However, as previously discussed, a genuine dispute of material fact exists as to whether Plaintiff actually committed those actions.

Next, Defendants argue that it was objectively reasonable for Selman to

terminate Plaintiff for the protection of the minors housed in the facility, citing certain Mississippi statutes and the injunction proceedings before the Forrest County Youth Court. But anything that happened after Plaintiff's termination – including her distribution of the videos and the Youth Court injunction proceedings – is irrelevant to the Court's analysis because such information was not available to Defendant Selman at the time he decided to terminate Plaintiff. *Freeman*, 483 F.3d at 411 (courts must apply "an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant").

Mississippi Code Section 43-21-261 generally provides that "records involving children shall not be disclosed, other than to necessary staff of the youth court . . . ." Miss. Code Ann. § 43-21-261(1). "Any person who shall disclose or encourage the disclosure of any records involving children or the contents thereof without the proper authorization . . . shall be guilty of a misdemeanor . . . ." Miss. Code Ann. § 43-21-267(1). It is undisputed, though, that Plaintiff had not distributed or disclosed any of the recordings at the time Selman decided to terminate her. Also, the video recordings at issue do not fall within any of the statutory definitions of "youth court records." *See* Miss. Code Ann. § 43-21-251. Finally, the genuine factual disputes surrounding Plaintiff's termination cause the Court to question whether a reasonable officer would have terminated Plaintiff. If events occurred as Plaintiff testified, an objectively reasonable officer may have been more concerned with protecting the facility's juvenile inmates. For all of these reasons, the Court concludes that Plaintiff has presented sufficient evidence to create a genuine factual dispute as to whether an objectively

reasonable officer would have terminated her.

## E.  *Fourteenth Amendment*

Plaintiff asserted two Section 1983 claims premised upon alleged violations of the Fourteenth Amendment. First, she claims that Defendants violated her Fourteenth Amendment right to due process by imposing a prior restraint without affording her notice or an opportunity to be heard. Second, she claims that Defendants violated the Fourteenth Amendment's equal protection clause by treating her differently than similarly situated male corrections officers. As Plaintiff conceded her Title VII claim, the Court will assume that she concedes her Fourteenth Amendment equal protection claim.

Plaintiff did not concede her Fourteenth Amendment due process claim, though. Defendants argue that Plaintiff's Fourteenth Amendment claims should be dismissed as a mere restatement of her First Amendment claims, citing *Williams*, 275 F. App'x at 390. In *Williams*, the plaintiffs asserted a First Amendment retaliation claim and a Fourteenth Amendment equal protection claim based on their government employers' selective enforcement of an employment policy. *Id.*; *see also Thompson v. Starkville*, 901 F.2d 456, 468 (5th Cir. 1990) (Fourteenth Amendment equal protection claim was a restatement of first amendment retaliation claim). Plaintiff's remaining Fourteenth Amendment claim pertains to the due process clause, rather than the equal protection clause. Therefore, *Williams* and *Thompson* are inapplicable in this respect.

## F.  *Tortious Interference with Employment*

Defendants offered several arguments pertaining to Plaintiff's claims against

Defendants Selman and Bolton for tortious interference with employment.

### 1. MTCA Notice

Defendants first argue that Plaintiffs failed to serve Defendants with notice of their claim, as required by the Mississippi Tort Claims Act. However, certain intentional torts – including tortious interference with employment – are excluded from the MTCA's waiver of sovereign immunity. *Zumwalt v. Jones Cnty. Bd. of Supervisors*, 19 So. 3d 672, 688 (Miss. 2009). Therefore, to the extent Plaintiff asserted a tortious interference claim against Selman and Bolton, it must have been in their individual capacities, and notice was not required. *Id.*

### 2. Qualified Immunity

Next, Defendants argue that Selman and Bolton are entitled to qualified immunity from Plaintiff's tortious interference claim because terminating her employment was a discretionary function of the Forrest County Sheriff's Department. Indeed, public officials enjoy "qualified official immunity from suit regarding acts within discretionary public authority." *Madison County v. Hopkins*, 857 So. 2d 43, 50 (Miss. 2003). However, "[a]n official has no immunity to a civil action for damages if his breach of a legal duty causes injury and (1) that duty is ministerial in nature, or (2) that duty involves the use of discretion and the governmental actor greatly or substantially exceeds his authority and in the course thereof causes harm, or (3) the governmental actor commits an intentional tort." *Barrett v. Miller*, 599 So. 2d 559, 567 (Miss. 1992); *see also Mosby v. Moore*, 716 So. 2d 551, 557 (Miss. 1998). Tortious interference with contract is an intentional tort. *Zumwalt*, 19 So. 3d at 672. Therefore,

Selman and Bolton are not entitled to qualified immunity from Plaintiff's tort claim.

### 3. *Unlawful Purpose*

The elements of tortious interference with employment are:

> (1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted.

*McClinton v. Delta Pride Catfish, Inc.*, 792 So. 2d 968, 976 (Miss. 2001). Defendants argue that the evidence demonstrates that Plaintiff was not terminated for any unlawful purpose, but, rather, that she was terminated for violating the code of conduct for JDC and Forrest County employees.

Plaintiff denied that she cursed and yelled at Selman over the phone, and she also denied that she submitted a false medical excuse. Therefore, a genuine issue of material fact exists as to whether she actually committed the acts which Defendants claim prompted her termination. Furthermore, the record contains evidence that Defendant Selman knew Plaintiff had made recordings of him allegedly abusing an inmate. Defendant Bolton testified that he based his decision to terminate Plaintiff on Selman's report and recommendation, and the County's 30(b)(6) representative testified that Selman decided to terminate Plaintiff.

In summary, there is a genuine dispute of material fact as to whether Plaintiff committed the acts for which Defendants claim to have terminated her. The record also contains evidence that Defendant Selman knew Plaintiff had made recordings of him allegedly abusing an inmate, and that Selman made the decision to terminate her. This

evidence creates a genuine dispute of material fact as to why Defendants terminated Plaintiff.

## G. Title VII and FMLA

Plaintiff conceded her Title VII and FMLA claims. Therefore, the Court grants Defendants' motion for summary judgment as to those claims.

## H. Punitive Damages

Defendants argue that punitive damages are not allowed in Section 1983 cases. Indeed, "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *Newport v. Fact Concerts*, 453 U.S. 247, 271, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981); *Davis v. West Cmty. Hosp.*, 755 F.2d 455, 467 (5th Cir. 1985). Accordingly, the Court grants summary judgment as to Plaintiff's claims for punitive damages against Forrest County and the individual Defendants in their official capacities. *Bellard v. Gautreaux*, 675 F.3d 454, 462 (5th Cir. 2012) (claims against a county official in their official capacity are claims against the county).

However, Plaintiff also asserted a state tort claim of tortious interference with employment against Defendants Selman and Bolton individually. Defendants argue that Plaintiff has failed to demonstrate that their behavior rose to a level which merits punitive damages. "Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." MISS. CODE ANN. § 11-1-65(1)(a) (2012). As noted above, an element of tortious

interference with employment is the "unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice)." *McClinton*, 792 So. 2d at 976. Therefore, if Plaintiff's tortious interference claim is successful, she may also have a valid claim for punitive damages. Indeed, Plaintiff has presented evidence that Defendants' purported reason for terminating her was false, that Defendant Selman knew she had a recording of him allegedly abusing an inmate, and that her termination was based upon Defendant Selman's recommendation. In the Court's opinion, this evidence is sufficient to leave open the possibility of punitive damages for Plaintiff's tortious interference claim.

### III. CONCLUSION

The Court **grants in part and denies in part** Defendants' Motion for Summary Judgment [76].

The Court grants the motion as to (1) any First Amendment retaliation claim asserted against Defendant Bolton in either his official or individual capacity, (2) Plaintiff's Fourteenth Amendment Equal Protection claim, (3) Plaintiff's Title VII claims, (4) Plaintiff's FMLA claims, and (5) any claim for punitive damages stemming from Plaintiff's Section 1983 claims against Forrest County or the individual Defendants in their official capacities. The Court denies the motion in all other respects.

SO ORDERED AND ADJUDGED this 18th day of December, 2012.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE